UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STACEY SCHUETT,

    Plaintiff,

    v.

FEDEX CORPORATION, et al.,

    Defendants.

Case No. 15-cv-0189-PJH

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS IN PART AND DENYING IT IN PART**

Defendants' motion for judgment on the pleadings came on for hearing before this court on October 7, 2015. Plaintiff appeared by her counsel Nina Wasow and Julie Wilensky, and defendants appeared by their counsel Sandra Isom. Having read the parties' papers, including the additional briefing ordered at the hearing, and the relevant legal authority, the court hereby GRANTS the motion in part and DENIES it in part.

## BACKGROUND

Plaintiff Stacey Schuett, who resides in Sebastopol, California, was married to Lesly Taboada-Hall on June 19, 2013, in Sonoma County, California. Prior to their marriage, they had lived together in a committed relationship for 27 years, and had two children. They entered into a California Registered Domestic Partnership in November 2001.

Plaintiff alleges that Ms. Taboada-Hall worked for FedEx Corporation[1] for 26 years and was a fully-vested participant in defendant FedEx Corporation's Employees' Pension Plan, a defined Traditional Pension Benefit Plan ("the Plan"), governed by the Employee

---

[1] In their reply to plaintiff's opposition to the present motion, defendants assert that Ms. Taboada-Hall was employed by Federal Express Corporation (not named as a defendant), and that named defendant FedEx Corporation is the Plan administrator and fiduciary.

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

Section 5.02 of the Plan requires that, for the Traditional Pension Benefit, a "Qualified Joint and Survivor Annuity" must be paid to the surviving spouse of a fully vested Plan participant who dies before retiring. In addition, at the time of the events in question, § 1.66 of the Plan defined "Spouse" to "have the same meaning as set forth in 1 U.S.C.A. § 7 (a person of the opposite sex who is a husband or wife), and shall be deemed to refer solely to the persons who have entered into a marriage, as defined in 1 U.S.C.A. § 7 (a legal union between one man and one woman as husband and wife)."

In February 2010, Ms. Taboada-Hall was diagnosed with cancer that had metastasized to her lungs. After her condition worsened in November 2012, she took a medical leave of absence.

Plaintiff alleges that in February 2013, she and Ms. Taboada-Hall communicated with Harry Saurer, a FedEx Human Resources ("HR") representative in Sacramento, California, about Ms. Taboada-Hall's pension and other employment benefits. Plaintiff alleges that Ms. Taboada-Hall was eligible for early retirement under the Plan, but that Mr. Saurer advised her not to retire at that time, as it would result in her having to spend more money for her medical benefits.

Plaintiff asserts that Ms. Taboada-Hall also asked about her other benefits, such as her insurance and 401(k) plan, and that she was told to list plaintiff as her sole beneficiary for those plans. She also claims that Ms. Taboada-Hall asked whether her "defined benefit" under the Plan would "pass to her partner" if she died, but that Mr. Sauer did not know, and told her to "ask someone else."

On June 3, 2013, Ms. Taboada-Hall's doctor advised her that her cancer was terminal. Plaintiff and Ms. Taboada-Hall began reviewing what benefits would be available to plaintiff after Ms. Taboada-Hall's death. Plaintiff claims that it was at this point that they discovered the Plan defined "spouse" as referring "only to a person of the opposite sex who is a husband or wife" (which incorporated the definition in § 3 of the Defense of Marriage Act ("DOMA"), codified at 1 U.S.C. § 7).

Plaintiff asserts that between June 3 and June 13, 2013, she and Ms. Taboada-Hall had several phone conversations with various FedEx Corporation HR personnel, and on June 13, 2013, they were finally told that plaintiff would not receive the surviving spouse benefit under the Plan, because "spouse" was limited to opposite-sex partners.

On June 19, 2013, plaintiff and Ms. Taboada-Hall were married in a civil ceremony at their home. The officiant was a Sonoma County Supervisor, and the ceremony was witnessed by a number of friends and family members. Ms. Taboada-Hall died on June 20, 2013. As of that date, licenses for marriages of same-sex couples were not available in California.

Six days later, on June 26, 2013, the United States Supreme Court declared § 3 of DOMA unconstitutional. See United States v. Windsor, 133 S. Ct. 2675 (2013). Also on June 26, 2013, the Court issued a decision in Hollingsworth v. Perry, 133 S.Ct. 2652 (2013), finding that the backers of Proposition 8, California's voter-enacted ban on same-sex marriage, lacked standing to pursue a defense of the measure after it had been held unconstitutional by the U.S. District Court for the Northern District of California, in Perry v. Schwarzenegger, 704 F.Supp. 2d 921 (2010). Two days later, on June 28, 2013, the Ninth Circuit lifted the stay it had previously imposed on the Perry court's order directing California officials to stop enforcing Proposition 8. Perry v. Brown, 725 F.3d 968 (2013).

On August 6, 2013, plaintiff filed a Petition to Establish the Fact, Date, and Place of Marriage, pursuant to California Health & Safety Code § 103450, in the Superior Court of California, County of Sonoma. Notice of the petition and a copy of all documents filed with the court were served on (among others) the FedEx Pension Plan Trustees and the Plan. The Superior Court subsequently set the matter for hearing on September 18, 2013. Notice of the hearing was served on (among others) the FedEx Pension Plan Trustees and the Plan. Neither the Trustees nor the Plan (nor any FedEx representative) appeared at the hearing or sought leave to intervene in the proceeding.

On September 18, 2013, following the noticed hearing, the Sonoma County Superior Court issued an Order Establishing the Fact of Marriage, declaring that the

marriage of plaintiff and Ms. Taboada-Hall had occurred on June 19, 2013. The court then issued a delayed certificate of marriage showing the date of the marriage as June 19, 2013.

On November 26, 2013, plaintiff submitted a claim for a qualified preretirement survivor annuity ("QPSA") under the Plan, as Ms. Taboada-Hall's surviving spouse. By letter dated April 30, 2014, FedEx Corporation denied the claim, asserting that at the time of Ms. Taboada-Hall's death, the Plan defined "spouse" by explicitly incorporating the DOMA definition of marriage ("a union between one man and one woman") and thus did not provide survivor benefits to same-sex spouses.

Plaintiff filed an appeal on June 27, 2014. In a letter dated August 25, 2014, defendant FedEx Corporation Retirement Appeals Committee ("FedEx RAC") denied the appeal, stating that "for purposes of the Plan," Ms. Taboada-Hall was unmarried at the time of her death and that she had no surviving spouse.

Plaintiff filed the present action on January 14, 2014. Named as defendants are FedEx Corporation, the Plan, and FedEx RAC. Plaintiff asserts three causes of action – (1) a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (against all defendants); (2) a claim of breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (against FedEx Corporation and FedEx RAC), for failure to administer the Plan in accordance with applicable law; and (3) a claim of breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (against FedEx Corporation), for failure to inform and/or for providing misleading communications.

The three causes of action are pled in the alternative. In the first two causes of action, plaintiff seeks payment of surviving spouse benefits under the Plan, or, in the alternative, equitable relief including payment of surviving spouse benefits for breach of fiduciary duty. In the third cause of action, plaintiff seeks an equitable remedy in the form of payment of non-spousal survivor benefits, based on a claim of breach of fiduciary duty for failure to disclose information. Defendants now seek judgment on the pleadings as to each of the three causes of action.

**DISCUSSION**

A.   Legal Standard

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A judgment on the pleadings is appropriate when the pleaded facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law. Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1301 (9th Cir. 1992); see also Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

The legal standards governing Rules 12(c) and 12(b)(6) are "functionally identical." Calfasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Thus, the standard articulated in Twombly/Iqbal applies equally to a motion for judgment on the pleadings. Chavez v. United States, 683 F.3d 1102, 1108-09 (9th Cir. 2012); Calfasso, 637 F.3d at 1054-55 & n.4.

To survive a Rule 12(c) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Moreover, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

B.   Defendants' Motion

    1.   First cause of action

In the first cause of action, plaintiff asserts a claim of wrongful denial of pension benefits in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), against all

defendants. Section 1132(a)(1)(B) authorizes civil actions by a participant or beneficiary to recover benefits due him/her under the terms of an ERISA plan, to enforce his/her rights under the terms of an ERISA plan, or to clarify his/her rights to future benefits under the terms of an ERISA plan. Plaintiff seeks an order declaring that defendants have violated the terms of the Plan, and an order requiring payment of a spousal survivor annuity under the Plan.

Defendants argue that FedEx RAC did not abuse its discretion in denying plaintiff's claim.[2] Defendants assert that the Plan requires that a claim for survivor benefits be determined as of the date of death (not as of the time of the claim). They contend that FedEx properly interpreted the Plan terms as of the date Taboada-Hall died, and that as of that date, the DOMA definition of marriage had not yet been declared unconstitutional. Thus, they argue, the Plan's definition of "spouse" (which incorporated the DOMA definition) still applied as of the date of death.

Defendants make two main arguments – that plaintiff and Ms. Taboada-Hall were not married as of the date of Ms. Taboada-Hall's death; and that even if they were married as of that date, FedEx did not abuse its discretion in interpreting the Plan as not requiring payment of a spousal survivor annuity to plaintiff.

Generally, the statutory requirements for a valid marriage under California law are the consent of the parties, see Cal. Fam. Code §§ 300, et seq.; the issuance of a license, see Cal. Fam. Code §§ 350, et seq.; solemnization, see Cal. Fam. Code §§ 400, et seq.; and authentication by returning the license to the county recorder, see Cal. Fam. Code §§ 422-425. Defendants contend that because same-sex marriage was not recognized in California at the time the wedding ceremony was performed, plaintiff and Ms. Taboada-Hall could not have obtained a marriage license – a legal requirement for marriage under California law – and did not do so prior to the event. Thus, defendants argue, they did not meet the requirements for a valid marriage under California law.

---

[2] The parties agree that the applicable standard of review is abuse of discretion.

1	Defendants contend that the Superior Court's order under Health & Safety Code
2	§ 103450 must be viewed only as "a statistical record acknowledging the late registration
3	of marriage," and that it has no evidentiary weight with regard to "the fact" of marriage.
4	They claim that if there was no valid marriage, there was no marriage to register.  They
5	assert that under these circumstances, the court should find that FedEx RAC did not
6	abuse its discretion or act arbitrarily or capriciously in denying the surviving spouse
7	benefit to plaintiff.

8	In opposition, plaintiff contends that in asserting in the complaint that the Superior
9	Court issued a marriage certificate stating that the couple had been married on June 19,
10	2013, she has plausibly alleged a valid marriage under California law as of the time of
11	Ms. Taboada-Hall's death on June 20, 2013.  She argues that there is no basis for
12	disturbing the Superior Court's order, which was issued following the hearing on the
13	verified petition.  She also contends that Fed-Ex's arguments are barred by the Rooker-
14	Feldman doctrine, because defendants are in essence seeking direct appellate review by
15	a federal court of a state court determination that was never appealed.

16	The court finds, based on the order of the Sonoma County Superior Court and the
17	issuance of the marriage license by the court, that plaintiff and Ms. Taboada-Hall were
18	legally married on June 19, 2013.  At the time of their marriage, plaintiff and Ms.
19	Taboada-Hall were registered domestic partners under California law, with all the same
20	state-law rights and obligations as "spouses."  See Koebke v. Bernardo Heights Country
21	Club, 36 Cal. 4th 824, 839 (2005) (Legislature's chief goal in enacting 2003 Domestic
22	Partner Act was to "equalize the status of registered domestic partners and married
23	couples").  They wanted to marry, intended to marry, and did everything possible to
24	legally marry while Ms. Taboada-Hall was still alive.  They plainly consented, and had the
25	capacity to consent.  The marriage was solemnized in front of numerous witnesses.  At
26	the time of the marriage, California law did not permit recognition of same-sex marriages,
27	and they were thus unable to obtain a marriage license prior to the event.  However, they
28	complied with every other requirement imposed by California law.

As noted above, nearly three years before they were married, the U.S. District Court for the Northern District of California had declared California's ban on same-sex marriages to be unconstitutional. The ruling was stayed pending the appeal. Were it not for California's application of the unconstitutional law prohibiting same-sex marriage, there would be no question that plaintiff and Ms. Taboada-Hall were married as of the date of Ms. Taboada-Hall's death. Under the circumstances, the absence of a license at the time plaintiff and Ms. Taboada-Hall were married was arguably a curable defect. In any event, as far as the State of California is concerned, plaintiff and Ms. Taboada-Hall were married on June 19, 2013, which was prior to the date of Ms. Taboada-Hall's death.

Defendants do not specifically argue that this court should set aside the Superior Court's order; rather, they assert that the order is "void" because plaintiff and Ms. Taboada-Hall did not have a marriage license in hand on that date, and could not have obtained one from the County Clerk, and thus, the Superior Court did not have "jurisdiction" to rule that plaintiff and Ms. Taboada-Hall were married on June 19, 2013. Nevertheless, defendants cite no authority allowing this court to vacate or set aside the Superior Court's order, and the court declines to do so.[3]

In their second main argument, defendants assert that even if the Superior Court's order validated the marriage as of the date of the ceremony, DOMA was in effect and the Plan did not recognize same-sex marriages, and thus FedEx did not abuse its discretion in interpreting the Plan as not requiring payment of a spousal survivor annuity to plaintiff.

It is undisputed that at the time of Ms. Taboada-Hall's death, the Plan defined "spouse" using the DOMA definition. Thus, defendants argue, FedEx's decision to deny

---

[3] The court does not agree with plaintiff's assertion that Fed-Ex's arguments regarding the validity of the marriage are barred by Rooker-Feldman. The Rooker-Feldman doctrine "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance v. Dennis, 546 U.S. 459, 460 (2006) (per curiam) (citation omitted); see also Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013). Here, Fed-Ex cannot be characterized as a "state-court loser," as it was not a party to the action in which plaintiff petitioned the Superior Court for an order establishing the fact of marriage.

1  benefits was based on an unambiguous and nondiscretionary Plan provision, and no
2  significant act of interpretation of the Plan occurred when FedEx denied benefits.  As
3  such, defendants assert, plaintiff cannot reasonably assert that FedEx abused its
4  discretion when it applied an unambiguous and nondiscretionary plan provision.

5  The court finds that the motion must be GRANTED as to the first cause of action.
6  Notwithstanding the fact that plaintiff has plausibly alleged that she and Ms. Taboada-Hall
7  were validly married in California on June 19, 2013, she has not alleged facts sufficient to
8  show that FedEx abused its discretion in interpreting the FedEx Plan as barring plaintiff's
9  eligibility for survivor benefits as of June 20, 2013, the date of Ms. Taboada-Hall's death.

10  2.  Second cause of action

11  In the second cause of action, plaintiff asserts a claim of breach of fiduciary duty
12  under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), against FedEx Corporation and FedEx
13  RAC, for failure to administer the Plan in accordance with applicable law.  Plaintiff pleads
14  this cause of action in the alternative to the first cause of action, and seeks declaratory
15  and injunctive relief amounting to payment of a spousal survivor annuity.

16  Defendants argue that because plaintiff has an adequate remedy under
17  § 1132(a)(1)(B) to address the alleged injury, she may not resort to § 1132(a)(3) – the
18  equitable "catchall" provision – to seek the same relief.  See Johnson v. Buckley, 356
19  F.3d 1067, 1077 (9th Cir. 2004); Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d
20  1223, 1229 (9th Cir. 2000).  Thus, they assert, this cause of action fails to state a claim.

21  In opposition, plaintiff contends that that she is not foreclosed from seeking relief
22  under both § 1132(a)(1)(B) and § 1132(a)(3).  She argues that the first cause of action
23  seeks a survivor benefit under the terms of the Plan, while the second cause of action
24  seeks a survivor benefit as mandated by ERISA, even if the Plan itself is found to
25  foreclose a benefit under its terms.  She contends that if she succeeds on both claims,
26  she will recover only one survivor benefit, but that at the pleading stage, she should be
27  permitted to pursue both claims.

28  Under § 1132(a)(3), a beneficiary of a plan is authorized to file suit to "enjoin any

9

act or practice" that violates Title I of ERISA or the terms of a plan, and/or to obtain "other appropriate relief" to redress such violations. 29 U.S.C. § 1132(a)(3). ERISA § 205(a)(2), which is part of Title I, provides that each covered pension plan shall provide that "in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity shall be provided to the surviving spouse of such participant." 29 U.S.C. § 1055(a)(2).

Plaintiff asserts that FedEx is required to interpret the Plan under controlling federal law, and that where an ERISA plan conflicts with federal law, the Plan must be interpreted in accordance with federal law (and that the Plan itself so provides). She contends that the Plan's definition of "spouse," which incorporates the unconstitutional definition in DOMA, conflicts with federal law in light of Windsor. She contends that the Department of Labor has issued guidance that under ERISA, the Internal Revenue Code, and related regulations, the term "spouse" must be read to refer to individuals who are lawfully married under any state law" (including same-sex spouses). See U.S. Dept. of Labor, Employee Benefits Sec. Admin., Technical Release No. 2013-4 (issued September 18, 2013), available at http://www.dol.gov/ebsa/newsroom/tr13-04.html (last visited Dec. 30, 2015).

Thus, she argues, since the Plan provides that for the Traditional Pension Benefit, a "Qualified and Joint Survivor Annuity" must be paid to the surviving spouse of a fully vested Plan participant who dies before retiring, FedEx is required to pay her the surviving spouse benefits. She asserts that because the definition of "spouse" in the Plan conflicts with ERISA, defendants were required to disregard the unlawful portion of § 1.66 and interpret the Plan in accordance with federal law.

Plaintiff contends that there is no bar to retroactive application of the rule in Windsor. She asserts that when the Supreme Court announces a new rule of federal law and applies that rule to the parties before it, the presumption is that the rule applies retroactively. See Harper v. Va. Dep't of Taxation, 509 U.S. 86, 90-97 (1993) (holding that Davis v. Mich. Dep't of Treasury, 489 U.S. 803 (1989) applied retroactively). Plaintiff

10

argues that the Supreme Court itself applied this principle in Windsor, when it held that DOMA § 3 was unconstitutional, and affirmed the lower court's judgment requiring the United States to refund the estate taxes the plaintiff had paid to the IRS following the death of her wife in 2009, even though at the time plaintiff's wife died, DOMA precluded the IRS from recognizing plaintiff as the surviving spouse. See Windsor, 133 S.Ct. at 2682-84.

Plaintiff also points to the decision in Cozen O'Connor P.C. v. Tobits, 2013 WL 3878688 (E.D. Pa. July 29, 2013), where the court applied Supreme Court decisions, including Windsor, retroactively. In that case, Sarah Ellyn Farley (the plan Participant), who lived and worked in Illinois, married Jean Tobits in Canada in 2006. The plan defined "spouse" as "the person to whom the Participant has been married throughout the one-year period ending on the earlier of (1) the Participant's annuity starting date or (2) the date of the Participant's death."

After Ms. Farley died in 2010, Ms. Tobits requested payment of the surviving spouse annuity in accordance with ERISA and the Internal Revenue Code. The employer filed an interpleader action in federal court. In an opinion issued on July 29, 2013, the court held, with regard to the plan at issue, that where a state (post-Windsor) recognizes a party as a "surviving spouse," the federal government must do the same with respect to ERISA benefits. Thus, the court held that Ms. Tobits was Ms. Farley's "surviving spouse" pursuant to the plan language. Id., 2013 WL 3878688 at *4 & n.29.

In their reply, defendants argue that Tobits is distinguishable because the plan at issue in that case did not define "spouse," and as a result, the definition of "spouse" had to be taken from ERISA, which prior to the Windsor ruling was governed by the DOMA definition of marriage. Defendants argue that under the retroactivity rule announced in Harper, the court in Tobits was required to apply Windsor retroactively. By contrast, they assert, the Plan in this case defined "spouse" to exclude same-sex spouses.

Defendants contend that the decision in Roe v. Empire Blue Cross Blue Shield, 2014 WL 1760343 (S.D.N.Y. May 1, 2014), supports their position. In that case, the

11

plaintiffs (plan participant and her spouse) were legally married in New York, and the participant sought to add her spouse to her health plan. Her employer denied the request on the basis that the plan did not cover same-sex spouses. The plaintiffs filed suit, seeking relief under 29 U.S.C. § 1332(a)(3) for "unlawfully and discriminatorily interfer[ing] with the attainment of benefits" under ERISA § 510, 29 U.S.C. § 1140, and for breach of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104. The defendants moved to dismiss for failure to state a claim.

The court concluded that ERISA was not designed to prohibit discrimination, since discrimination is prohibited under other federal statutes such as Title VII of the 1964 Civil Rights Act, and that because the plaintiffs had asserted only claims under ERISA, the complaint failed to state a claim under ERISA § 510. The court also dismissed the ERISA § 404 claim, finding that plaintiffs had failed to allege that defendants were acting in a fiduciary capacity or that they breached any fiduciary duty under ERISA. In December 2014, the Second Circuit issued a summary order affirming the district court. See Roe v. Empire Blue Cross Blue Shield, 589 Fed. Appx. 8 (Dec. 23, 2014). The affirmance noted, however, that "[a]s the District Court held, this decision does not address whether the plan exclusion is constitutional or otherwise lawful under any other federal or state laws." Id.

Defendants contend that the court in Empire distinguished Tobits on the basis that the plan in Empire had a clause excluding same-sex couples as spouses while the plan in Tobits did not include a definition of "spouse." Here, defendants argue, as in Empire, the plan defined "spouse" and FedEx applied the definition that was in effect as of the date of death. Moreover, they assert, unlike what they consider to be the "void" marriage at issue here, the marriage in Tobits was valid (as it took place in Canada, where same-sex marriage was legal).

Defendants contend that just as in Empire, plaintiff here is seeking to be included in FedEx's Plan, based on the decision in Windsor, despite the clear exclusion for same-sex couples. However, they argue, just as in Empire, FedEx is not precluded from

12

excluding same-sex couples from receiving benefits under the Plan – even if the benefits are being provided in a discriminatory manner. Thus, defendants assert, the court is not required to retroactively apply Windsor and allow same-sex couples to receive benefits under the Plan.

Defendants argue further that even were this court to retroactively apply Windsor, plaintiff would not be entitled to the surviving spouse benefit. They cite Reynoldsville Casket Co. v. Hyde, 514 U.S. 749 (1995), where the Supreme Court cited the rule articulated in Harper, but also stated that when courts apply a new rule of law to pending cases "retroactively," they "may find" instances where the new rule does not determine the outcome of the case. Id. at 752, 758-59. For example, the Court noted, the deciding court might find an alternative way of remedying the constitutional violation, or a previously existing independent legal basis for denying relief, or a well-established general legal rule that trumps application of the new rule of law, or a principle of law that limits retroactive application. Id. at 759.

Here, defendants contend, there are "special circumstances" of the kind identified in Reynoldsville that militate against the application of the decision retroactively. First, they assert, there is no constitutional violation that needs to be cured because the decision to deny benefits involved a private actor and a private plan. Second, they argue, the "fact" that plaintiff's marriage to Taboada-Hall "was not valid in any jurisdiction" at the time of Taboada-Hall's death is a previously existing independent legal basis for denying relief. Third, they contend that ERISA's unique statutory scheme and regulations limit defendants' ability to retroactively apply Windsor absent an amendment to the plan.

In particular, defendants argue that IRS Revenue Ruling 2013-17 as applied by IRS Notice 2014-19 prohibits retroactive application of Windsor absent a plan amendment. See Internal Revenue Service, IRS Not. 2014-19, 2014 WL 1334128 (Apr. 21, 2014); IRS Rev. Rul. 2013-17, 2013 WL 4607583 (Aug. 30, 2013). IRS Notice 2014-19 provides that qualified retirement plan operations must reflect the outcome of Windsor as of June 26, 2013, but also that if a plan sponsor chooses to apply the rules to reflect

13

the outcome of Windsor prior to June 26, 2013, the sponsor must amend the plan.[4]

The court finds that the motion must be DENIED as to the second cause of action. ERISA requires a fiduciary to follow plan documents insofar as such documents are consistent with Title I of ERISA. See 29 U.S.C. §§ 1104(a)(1)(D), 1132(a)(3). ERISA requires defined benefit plans such as the Plan at issue to provide a qualified preretirement survivor annuity to all married participants who are vested and die before the annuity starting date, unless the participant has waived the benefit and the spouse consented to the waiver. See 29 U.S.C. § 1055(a)(2).

DOL guidance following Windsor makes clear that ERISA's mandatory benefits provisions apply to all spouses, including same-sex spouses. See DOL Technical Release 2013-04. Section 11.04 of the Plan provides that "[i]f any provision or term of this Plan, or of the Trust Agreement entered into pursuant hereto, is deemed to be at variance with, or contrary to, any law of the United States . . . , the provision of the law shall be deemed to govern."

Under § 3 of DOMA, the term "spouse" in ERISA and the Internal Revenue Code (and all federal statutes) had to be interpreted to mean a spouse of the opposite sex, in a marriage recognized under applicable state law. Windsor involved a claim that the DOMA definition was unconstitutional as applied to U.S. tax laws. The Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment (incorporated into the Due Process Clause of the Fifth Amendment) prevented the federal government from refusing to recognize same-sex marriages that have been entered into under the law of a state. The claim accrued prior to the filing of the lawsuit, and the decision appears to invalidate § 3 of DOMA retroactive to 1996, the date of enactment. Notably, the decision in Windsor applied retroactively.

The court finds that the Tobits decision supports plaintiff's position to a limited

---

[4] Here, FedEx did amend the Plan to eliminate the DOMA definition of marriage, "[e]ffective June 26, 2013."

14

extent. In Tobits, an Illinois probate court had determined that under Ms. Tobits, who had been legally married to Ms. Farley in Canada, was the "surviving spouse" of her partner under Illinois law. Based on this holding, the Tobits court found that "post-Windsor," Ms. Tobits was also the "surviving spouse" under the ERISA plan. In the present case, although California denied recognition of the term "spouse" to same-sex couples at the time of Ms. Taboada-Hall's death on June 20, 2013, the Sonoma County Superior Court determined that plaintiff and Ms. Taboada-Hall were married on June 19, 2013, and issued a delayed marriage certificate. Thus, Tobits involved federal deference to Illinois' definition of "spouse;" here, this court defers to the California court's certification of the marriage.[5]

However, the court is not persuaded by defendants' argument that the reasoning in the Empire decision is applicable or relevant. Empire involved a claim under ERISA § 510, which is not the case here. The focus of the decision was on whether the plaintiff could allege a viable claim that her employer had "discriminatorily" interfered with "the attainment of benefits" under ERISA. Here, the second cause of action alleges breach of fiduciary duty for failure to administer the Plan in accordance with applicable law. Indeed, the Second Circuit in its affirmance of the district court's ruling noted that the decision did not address whether the exclusion of same-sex spouses was constitutional or otherwise unlawful.

Finally, the court is not persuaded by defendants' argument that Windsor should not be applied retroactively, because this case involves certain "special circumstances" (as set forth in Reynoldsville) that justify departure from the rule announced in Harper.

First, while it is true that the decision to deny benefits in this case involved a private actor and a private plan, that does not translate into a finding that no constitutional

---

[5] In addition, the court notes that in Obergefell v. Hodges, 135 S.Ct. 2584 (2015), the Supreme Court held that marriage is a fundamental right for all Americans, regardless of sexual orientation; that state laws that exclude same-sex couples from civil marriage on the same terms as opposite-sex couples are invalid; and that there is no lawful basis for a state to refuse to "recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character." Id. at 2604-08

15

issues are implicated. ERISA plans are regulated pursuant to federal law, primarily through the DOL and the IRS. Following Windsor, which held that DOMA § 3 was unconstitutional, ERISA plans, by definition, must treat couples in same-sex marriages as married for the purposes of spousal benefits prescribed under ERISA, such as survivor benefits.

Second, the court has already determined, as set forth above in the discussion of the first cause of action, that plaintiff has plausibly alleged that her marriage to Ms. Taboada-Hall was valid as of the time of Ms. Taboada-Hall's death, and thus there is no previously existing independent legal basis for denying relief.

Third, defendants have not articulated any basis upon which the court can determine that ERISA's statutory scheme and regulations limit defendants' ability to retroactively apply Windsor absent an amendment to the plan. Moreover, it is unlikely that questions of such statutory or regulatory limitations could be resolved in a Rule 12(c) motion.

The court finds that plaintiff has adequately alleged that FedEx has violated Title I of ERISA by acting contrary to applicable federal law and failing to provide plaintiff with a benefit mandated by ERISA, and that she is entitled to pursue equitable relief to remedy that violation. The court is not persuaded at this stage of the case and under the facts alleged in the complaint that there is any basis for denying retroactive application of Windsor.

3.   Third cause of action

In the third cause of action, plaintiff alleges a claim of breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), against defendant FedEx Corporation. Plaintiff claims that FedEx Corporation breached its fiduciary duty to provide complete and accurate information through the statements of its representatives, principally Mr. Saurer.

Specifically, plaintiff alleges that FedEx Corporation failed to inform her (and Ms. Taboada-Hall) prior to Ms. Taboada-Hall's death that the only circumstance in which

16

FedEx would deem plaintiff eligible to receive a survivor benefit under the TPB Plan was if Ms. Taboada-Hall retired prior to death – in which case plaintiff would be entitled to a non-spousal benefit (albeit in an amount less than the spousal benefit, to reflect the fact of Ms. Taboada-Hall's early retirement).

Defendants argue that plaintiff cannot state a claim for breach of fiduciary duty based on these allegations because she cannot show that Mr. Saurer or the HR personnel are plan fiduciaries; because plaintiff does not allege any facts showing that a plan fiduciary provided incorrect or misleading information; because plaintiff is neither a participant nor a beneficiary, and thus lacks standing to assert a claim for equitable relief under § 1132(a)(3); and because a claim under § 1132(a)(3) is improper where a remedy for the alleged harm is available under § 1132(c)(1)(B).

In opposition, plaintiff asserts that the third cause of action is asserted against FedEx Corporation, a named fiduciary of the Plan, and not against Mr. Saurer or any other HR personnel; that she has plausibly alleged that FedEx failed to provide complete and accurate information about benefits under the Plan, because she has asserted that Taboada-Hall would have elected a non-spousal benefit for plaintiff had she known that defendants would deem plaintiff ineligible to receive spousal benefits; that she has plausibly alleged an entitlement to an equitable remedy because she has asserted that she is a beneficiary of the Plan; that she has standing to assert such a claim because she is a beneficiary; and that the § 1132(a)(3) claim is pled an alternative to the claim under § 1132(c)(1)(B).

The court finds that the motion must be GRANTED as to the third cause of action. A plaintiff must be either a participant or a beneficiary of a plan to bring an action for breach of fiduciary duty.  See 29 U.S.C. § 1104(a)(1); 29 U.S.C. § 1132(a)(1)-(9).  Under ERISA, a beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).  Plaintiff is not a participant, as she was not a FedEx employee.  Thus, in order to recover, she must be a beneficiary.

1    In her opposition, plaintiff asserts that a person "may become entitled to" a benefit
2  if he/she has a colorable claim to vested benefits.  She asserts that she has a colorable
3  claim for benefits, as she is the surviving spouse of a deceased Plan participant who was
4  fully vested in her pension when she died.  Plaintiff contends that formal designation as a
5  beneficiary is not required by the statutory definition cited above.

6    The court finds, however, that plaintiff lacks standing as a beneficiary to pursue
7  the third cause of action because she was not designated as a beneficiary in writing by
8  the participant (Taboada-Hall), as required by FedEx's Traditional Benefit Plan ("TPB"),
9  which defines non-spouse beneficiaries as surviving relatives in a scheduled order
10 (children, then parents, then siblings, then the participant's estate).  A non-spouse
11 survivor benefit is not payable under the TPB Plan unless the participant retires before
12 death, and Taboada-Hall did not retire and thus could not designate plaintiff as a
13 beneficiary.[6]

14   Plaintiff argues that she has a colorable claim because Taboada-Hall would have
15 retired before she died had she known plaintiff would not receive the surviving spouse
16 benefit, even though retiring would have terminated her health insurance or substantially
17 increased the cost; and because Taboada-Hall would have designated plaintiff as her
18 non-spouse beneficiary.  However, there is no basis upon which the court can infer the
19 truth of the speculations underlying the allegations.  For example, given that the cost of
20 Ms. Taboada-Hall's medical expenses would have increased had she retired, and also
21 given that there was no way for her to know exactly how long she would live, it is not
22 certain that Ms. Taboada-Hall would have opted to retire even if Fed-Ex had disclosed
23 the information plaintiff alleges if failed to disclose.

24   Even assuming that there is a factual dispute regarding whether defendants
25 disclosed the information that plaintiff claims they failed to disclose, it is clear that
26 Taboada-Hall did not choose to retire before her death, and thus plaintiff cannot be a

---

[6] Even as a "surviving spouse," plaintiff does not have standing to seek an optional non-spouse survivor benefit because the benefits are mutually exclusive.

beneficiary under the provision of the Plan that provides benefits to beneficiaries after the retirement of the participant. Because there is no possibility that plaintiff could become entitled to a non-spouse benefit, she has no standing to pursue her third claim for relief.

## CONCLUSION

In accordance with the foregoing, the court GRANTS the motion for judgment on the pleadings as to the first and third causes of action, and DENIES the motion as to the second cause of action. The dismissal of the first and third causes of action is WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: January 4, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge